UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GIUSEPPE D'ALESSANDRO,

                              Plaintiff,

        -against-

THE CITY OF NEW YORK, BRENDA MOR**CV 13 -         0930**
Individually and in Her Official Capacity as an
Employee of the City of New York Who Is /Was an
Assistant District Attorney and/or Employee of the
Office of the District Attorney, County of New
York,  CYRUS R. VANCE, JR. Individually and in
His Official Capacity as the District Attorney for the
County of New York, and JOHN DOES 1-5
Individually and in Their Official Capacities as
Employees of the City of New York Who Are /Were
Assistant District Attorneys and/or Employees of the
Office of the District Attorney, County of New
York, and ANTHONY VAZQUEZ and MICHAEL
CASTIGLIA, Individually and in Their Official
Capacities as Employees of the City of New York
who Are /Were Police Officers Employed by the
New York City Police Department, and JOHN
DOES 6-10, Individually and in Their Official
Capacities as Employees of the City of New York
Who Are /Were Police Officers Employed by the
New York City Police Department,

                              Defendants.

------------------------------------------------------------X

Case No.

**COMPLAINT**

A jury trial is demanded

        Plaintiff Giuseppe D'Alessandro, by his attorneys, SULLIVAN GARDNER P.C.,

as and for his complaint in the above-entitled action, respectfully alleges as follows:

                              NATURE OF ACTION

        1.        This action seeks damages arising out of the unconstitutional and tortious

conduct of the individual defendants, acting under color of the laws of the State of New

York, which caused Plaintiff to be wrongfully convicted and incarcerated for a period of

over 15 years.  Plaintiff's conviction was overturned and the underlying indictment dismissed by order of the New York Supreme Court, Appellate Division, First Department on June 29, 2010.  In doing so, the Court found that the indictment against Plaintiff should have been dismissed at the trial level or, at the very least, in appellate proceedings which took place in 1996 based on a clear and unequivocal speedy trial violation, as undeniably stated in controlling case law at the time. People v. D'Alessandro, 2010 NY Slip. Op. 75591(U), 2010 WL 2652447 (1st Dept. June 29, 2010), *cert denied,* 15 N.Y.3d 850 (the "Dismissal Decision").  By this action, Plaintiff seeks damages from the Defendants based on, *inter alia*, their actions in violation of the United States Constitution for improper investigation by the prosecuting District Attorney and police officers, failure to supervise and intervene to prevent the constitutional violations, failure to bring the controlling case law to the Court's attention, and the failure to properly supervise or have a system and policy in place to identify, monitor and train employees as to controlling appellate case law relevant to ongoing criminal prosecutions. Plaintiff seeks to recover damages pursuant to 42 U.S.C. §§ 1983, 1988, as well as for negligence and unauthorized and malicious prosecution.

PARTIES

2.      Plaintiff Giuseppe D'Alessandro is an individual residing in the County of Queens, State of New York.

3.      Defendant The City of New York (the "City") is a municipal corporation of the State of New York situated partially in the Eastern District of New York.

4.      Upon information and belief, Defendant Brenda Morris ("Morris") is an individual residing in Atlanta, Georgia.  At all times relevant herein, Morris was an

assistant district attorney and/or employee of the New York County District Attorney's office.[1]

5.    Upon information and belief, Cyrus R. Vance, Jr., ("Vance") is an individual residing in the County of New York, State of New York, and currently holds the office of District Attorney for the County of New York ("District Attorney"). Vance is the successor District Attorney to Robert M. Morganthau ("Morganthau"); Morganthau served as the District Attorney during the time period relevant to this matter. Vance is a named party herein pursuant to Fed. R. Civ. P. 25, as the successor to Morganthau, the District Attorney during the relevant time period.

6.    That at all times relevant herein, John Does 1-5 were Assistant District Attorneys, supervisory Assistant District Attorneys and/or other employees of the New York County District Attorney's office with management and/or supervisory authority. Vance and John Does 1-5, are referred to collectively as the "DA Defendants").

7.    That at all times relevant herein, Detective Anthony Vazquez, Shield No. 2820 ("Vazquez"), Detective Michael Castiglia, Shield No. 3457 ("Castiglia"), and John Does 6-10, were police officers employed by the New York City Police Department, and were duly appointed and employed as Police Officers. Vazquez, Castiglia and John Does 6-10 are referred to collectively herein as the "Defendant Police Officers."

<u>JURISDICTION AND VENUE</u>

8.    The federal district court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

---

[1] It is our understanding that at some point after the circumstances alleged herein, Brenda Morris became employed by the United States Justice Department, Public Integrity Section, up through and including her involvement as a lead attorney in the improperly handled prosecution of former Alaska Senator Ted Stevens in 2008.

9.      Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

10.     In 1989, Giuseppe D'Alessandro worked as a manager at a restaurant in New York owned by his father-in-law.  While working at the restaurant, D'Alessandro became involved in an argument with an employee suspected of stealing $3,000 from the restaurant.  The employee claimed that following an argument over whether he had stolen the funds from the restaurant, D'Alessandro confined the employee in the basement of the restaurant for over twelve hours seeking return of the money.  D'Alessandro has always maintained that he did not commit the alleged crime, and in no manner confined the employee in the basement or otherwise, but merely had a heated argument over the funds. In or about August 1989, following a complaint received from the employee, D'Alessandro was arrested on charges of kidnapping, with a top charge of kidnapping in the second degree. The case was thereafter prosecuted by the New York County District Attorney's Office, headed at the time by Robert M. Morgenthau.

11.     In or about September 1989, Defendant Morris, then an assistant district attorney, was assigned to prosecute the case against D'Alessandro.  In October of 1989, Morris commenced presentation of the case to a grand jury.  D'Alessandro testified at the grand jury.  On November 3, 1989, Morris entered into the court files that a true bill was returned, indicting Plaintiff for kidnapping in the second degree and related offenses. D'Alessandro was arraigned on the indictment stated by Morris to exist. Upon information and belief, a signed copy of the indictment was never filed with the court and

does not exist anywhere in the Queens County court system or the District Attorney's office. There is no, and never was any, formal evidence of a true bill voted against D'Alessandro in 1989.

12.     Following his initial unsigned indictment filing, and arraignment thereon, the DA Defendants offered Plaintiff a plea with a sentence solely of probation.  As Plaintiff has consistently maintained his innocence, he rejected the offer, and chose to defend against the charges at trial. Subsequent to the rejection of the offer of probation, Morris and the DA Defendants resubmitted the case to a new grand jury and obtained a superseding indictment with a top count of kidnapping in the first degree; all other charges remained the same. Morris and the DA Defendants undertook an investigation of the alleged conduct by Plaintiff at various points in their handling of the matter, and proceeded with an offer of probation, and only upon rejection of the offer, charged Plaintiff with kidnapping in the first degree, a charge that carries a mandatory minimum sentence of 15 years to life.[2]

13.     During pre-trial proceedings, Plaintiff's trial counsel moved to compel production of the grand jury minutes for inspection and dismissal of the indictment for insufficient evidence on December 4, 1989. In a pre-trial motion dated September 13, 1990, Plaintiff moved to dismiss the indictment on the grounds that speedy trial time pursuant to CPL 30.30 had run out.  The trial court denied the motion, in a January 7, 1991 decision (the "Speedy Trial Decision").  The court calculated the amount of time chargeable to the prosecution as 121 days.

---

[2] The previously charged Kidnapping in the second degree carries a minimum sentence of 5 years. N.Y. Penal Law §§ 70.00, 135.20.

14.    However, the Speedy Trial Decision failed to properly calculate the speedy trial time, excluding more than 200 additional days that should have been charged to the People. In improperly excluding the time during which there was a long delay in providing the grand jury minutes to the court regarding a motion to dismiss the indictment, and a smaller amount of time from indictment to arraignment thereon, the Speedy Trial Decision blatantly and erroneously relied upon case law overturned by the Court of Appeals prior to the Speedy Trial Decision.  Specifically, 196 days of delay were excluded, which were occasioned by the prosecution's unjustified failure to make available to the court the grand jury's minutes, while D'Alessandro's CPL §210.30 dismissal motion was pending.  Yet, on May 8, 1990, prior to the speedy trial motion, the Court of Appeals had decided the case of People v. McKenna, 76 N.Y.2d 59 (1990). McKenna held that the People's delay, without justification, in producing grand jury minutes is time which must be charged to the People. Id. at 66.  Had the McKenna decision been properly raised and considered, the trial court could not have properly, and would not have, denied the speedy trial motion and the indictment would have been dismissed at that point in the proceedings. See, Dismissal Decision. The DA Defendants argued to the trial court, contrary to McKenna, that the time during a delay in providing the grand jury minutes to the court is excludable.

15.    On June 25, 1991, Plaintiff was found guilty after a jury trial.  Following the jury verdict, the trial judge set aside the verdict based on prosecutorial misconduct during the summation.  On the People's appeal, the Appellate Division, First Department reversed and reinstated the guilty verdict.  On the appeal, the McKenna case was again

not raised by the Defendants.[3]  Had the <u>McKenna</u> decision been properly raised and considered by the appellate court, the indictment would have been dismissed and the conviction overturned.

16.     On April 20, 1993 Plaintiff was sentenced to concurrent terms of 15 years to life, 1 ½ to 4 ½ years, and 1 to 3 years.  At sentencing, the sentencing court expressed its belief that the sentence was overly harsh, but that it was constrained by the statutory mandatory minimum sentence.

17.     Plaintiff served 14 ½ years of his sentence before he was released on parole in November of 2007.  Following his release on parole, Plaintiff was detained by the Department of Homeland Security ("DHS") based solely on this conviction and its effect on his status as a legal permanent resident, but non-citizen.  He remained in DHS custody until his release was obtained by the undersigned counsel by way of a Petition for Writ of Habeas Corpus on April 3, 2009. <u>D'Alessandro v. Mukasey</u>, 2009 WL 931164 (W.D.N.Y. 2009).

18.     The Dismissal Decision was issued on June 29, 2010, by the Appellate Division, First Department, wherein it vacated Plaintiff's conviction and dismissed the indictment.  The Appellate Division did so in granting a writ of error coram nobis, finding that Plaintiff's appellate counsel was ineffective on his direct appeal of the conviction, decided in 1996.  Relying on <u>McKenna</u>, the court found that counsel was ineffective for failing to raise the above-described clear-cut and completely dispositive

---

[3] In addition, the Defendants failed to note that the Speedy Trial Decision erroneously relied on the case of <u>People v. Rivera</u>, 160 A.D.2d 234 (1st Dept. 1990), in excluding 32 days of delay between the filing of the indictments and arraignments. On April 4, 1991, the Court of Appeals had decided the case of <u>People v. Correa</u>, 77 N.Y.2d 930 (1991), which explicitly held that <u>Rivera</u> was incorrect.  <u>Correa</u> held that delays between indictment and arraignment should be charged to the People. <u>Id.</u> at 931.  In <u>People v. Ortiz</u>, 200 A.D.2d 505, 506 (1st Dept. 1994), the First Department explained that <u>Correa</u>, which was decided about

speedy trial argument. People v. D'Alessandro, 2010 NY Slip. Op. 75591(U), 2010 WL 2652447 (1st Dept. June 29, 2010) (previously defined as the "Dismissal Decision"). The Dismissal Decision held that "[b]ecause it is "clear-cut" that defendant would have prevailed on the speedy trial issue had his appellate counsel raised it, he is entitled to a writ of error coram nobis." The District Attorney's application for leave to appeal the Dismissal Decision was denied by the Court of Appeals on September 29, 2010. People v. D'Alessandro, 15 N.Y.3d 850.

19.    Although relevant, the instant action does not rely on the failure of appellate counsel to raise a dispositive speedy trial argument.  Rather, this case concerns, *inter alia*, Morris and the DA Defendants who had a duty to know the law as it existed at the time, and had both a legal and an ethical obligation to disclose controlling case law to the court, as well as the failure by the DA Defendants to supervise and properly train the assistant district attorneys regarding this issue, failure to intervene and stop the constitutional violation from occurring, and the failure to have a system in place for such training and notice to be provided to assistant district attorneys, as well as the improper investigation carried out by Morris and the Defendant Police Officers.  As regards, the McKenna decision and the speedy trial violation, both statutory and constitutional, the failure occurred throughout the relevant time period, including, when the DA Defendants responded to the September 13, 1990 motion to dismiss, and then again on appeal.

20.    Further, Defendant Morris, with other employees and the DA Defendants, violated their obligations and duties as prosecutors when they failed to properly initiate the prosecution of Plaintiff, and acted outside of their role as prosecutors and engaged in

---

four months after the Speedy Trial Decision, and before trial, applied retroactively. Ortiz was decided prior to the perfecting of the direct appeal of the decision.

the unconstitutional investigation of Plaintiff, and part of that improper investigation indicted Plaintiff on kidnapping in the first degree. Upon information and belief, Defendant Morris never obtained a signed indictment until the superseding indictment, and thus proceeded with a wholly unauthorized initial prosecution. This was in addition to the wholly improper investigation and superseding indictment. Defendant Morris' actions were overzealous, unconstitutional and illegal, and were indicative of her method and mode of conducting prosecutions. The DA, including the supervising Defendants at the District Attorney's Office, negligently failed to recognize that Morris was not qualified when she was hired, and failed to properly supervise and monitor Defendant Morris in her work, and failed to ensure that a properly authorized prosecution was conducted.

21.    By reason of the Defendants' actions, Plaintiff D'Alessandro was deprived of his civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. The unlawful, unconstitutional, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the Defendants were taken under color of state law, and caused Plaintiff to be maliciously and improperly prosecuted, unfairly tried, wrongfully convicted, and subjected to cruel and unusual punishment during and as a result of his unwarranted incarceration, and caused to suffer unwarranted and unconstitutional incarceration for over 15 years (approximately 14 and a half years in state custody, and another year and a half in federal detention as a direct result of the overturned state conviction). In addition to suffering the loss of liberty for over 15 years, Defendants' improper actions directly caused Plaintiff to suffer injuries and damages, all of which were foreseeable to the Defendants, and continue to date and

will continue into the future, including, *inter alia*, physical injuries, emotional distress, loss of family relationships, severe psychological damage, loss of educational and professional opportunity, loss of income, legal expenses, inadequate medical care, humiliation, degradation, permanent loss of psychological development and well being, and restrictions on all forms of personal liberty and freedoms.  Plaintiff improperly suffered over 15 years of prison, and has had his life permanently altered and damaged.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Deliberate Indifference to Constitutional Rights Violations by The**
**DA Defendants and The City**

22.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

23.    The DA Defendants and the City's failure to maintain an adequate system in place by which controlling developments in appellate law are distributed to assistant district attorneys caused the Defendants to omit citation to <u>McKenna</u> and instead to rely on outdated and overruled legal principles.  Further, the DA Defendants and the City failed to properly train and supervise the assistant district attorneys in the office in order to ensure that the assistants were aware of relevant appellate case law and legal developments.

24.    Had the DA Defendants and the City maintained an adequate system, or properly supervised the assistants with regard to relevant case law and legal developments, those Defendants would not have cited overturned case law and would have properly alerted the court to the existence of <u>McKenna</u>.  Had the court been alerted to <u>McKenna</u>, it would have granted the Plaintiff's speedy trial motion and dismissed the indictment in 1990.

25.    The DA Defendants and the City knew, or should have known, to a moral certainty, that the employee assistant district attorneys, including Defendant Morris, would need access to current case law and would confront situations where they would be relied upon to know the current state of the criminal law, and criminal procedure law, in New York State.    The proper training, supervision and adequate systems to monitor developments in the applicable criminal law, and criminal procedure law, would have avoided the deprivation of constitutional rights. As the criminal law and criminal procedure law is often changed with a mind toward the protection of the criminal defendants' constitutional rights, its proper application based on the current state of the law at the time will frequently affect and cause deprivation of the criminal defendants' constitutional rights.    The failure to train amounted to deliberate indifference to the rights of persons, whether persons investigated or criminal defendants, with whom the assistants will come into contact.

26.    Further, the DA Defendants and the City maintained a policy, custom and/or practice of deliberate indifference to violations by their employees of the Constitutional rights of persons being investigated and prosecuted, including, *inter alia*, the acts of Defendant Morris herein, resulting in the Constitutional Violations at issue in this action. Specifically, the DA Defendants were aware of Defendant Morris' acts in, *inter alia*, proceeding with an illegal investigation of the Plaintiff to support charges of Kidnapping in the Second Degree, despite the fact that a signed indictment containing such charge was never obtained; the intentional, unwarranted and unjustified delay of the prosecution by the refusal to disclose grand jury minutes to the trial court, for hundreds of days, in an attempt to, *inter alia*, exert undue influence to accept the offered plea;

exacting retribution against the Plaintiff by trumping the charges against him to Kidnapping in the First Degree, based on Plaintiff's failure to plead to the initial (false) charges; and improper acquisition, manufacturing and hiding of evidence in the investigation of the Plaintiff, including, but not limited to, the acquisition and manufacture of evidence, hiding of contrary exculpatory evidence, and failure to uncover fully, review and follow up on exculpatory evidence, as to the time period that the complainant was alleged to have been restrained, such as obtaining, procuring and facilitating false witness statements on this issue while failing to reveal and investigate the witnesses and their actual and true statements.

27.    These tactics were undertaken continuously and regularly by Morris and other assistant district attorneys as a policy and practice of deliberate indifference to the rights of persons being investigated and/or prosecuted. The New York County District Attorney's Office, as well as other District Attorneys' Offices in New York City, particularly in and around the time of the Plaintiff's prosecution, has a long history of the types of constitutional violations described herein, and a deliberate indifference to those violations. The DA Defendants and the City had notice of these tactics by Morris and the other assistant district attorneys, yet they tolerated, thereby encouraging, such tactics. The DA Defendants and City not only failed to discipline Morris or any of the other assistant district attorneys guilty of such tactics, but rather directly encouraged them, through their deliberate and purposeful indifference.

28.    As a direct and proximate result of the foregoing, Plaintiff was wrongfully convicted, sentenced and spent over 15 years in New York State and federal custody (as a result of the state conviction). Had Morris and the DA Defendants been properly

Case 1:13-cv-00930-SLT-LB   Document 1   Filed 02/21/13   Page 13 of 26 PageID #: 13


informed, had a proper case law review system been in place or assistant district attorneys properly supervised, and had the illegal policies, customs and practices of the DA Defendants and the City set forth herein been corrected, the Plaintiff would never have been convicted and would never have been detained and incarcerated for over 15 years.

29.     The actions of the DA Defendants and the City deprived Plaintiff of his constitutionally protected rights, privileges and immunities under the Fourteenth Amendment to the Constitution of the United States of America to be free from the deprivation of liberty without due process of law.  The unlawful and improper actions of the DA Defendants and the City, which caused Plaintiff's detention of over 15 years, were taken under color of state law. The DA Defendants and the City knew or should have known that this conduct was contrary to well established and incontrovertible constitutional law and principles and statutory rights.

30.     Throughout the events recited herein the DA Defendants and the City, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, specifically the Fourth and/or Fourteenth Amendments to the Constitution.  As a result of these actions, the DA Defendants and the City individually and/or vicariously by and through their agents, servants, and/or employees, deprived plaintiff of the rights, privileges and immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.

31.     These acts taken by the DA Defendants and the City were wrongful, reckless and intentional. The actions of DA Defendants and the City in depriving Plaintiff

of his Constitutional rights were willful and malicious. They were taken in bad faith, with a deliberate indifference to the Plaintiff's constitutional rights and with the intent to harm Plaintiff. These actions were part of a policy, practice and custom that so deprived plaintiff of his Constitutional rights.

32.     As a result of the above described conduct by DA Defendants and the City, Plaintiff has been harmed and continues to be harmed, due to the prolonged deprivation of his liberty and conviction, including, *inter alia*, the loss of liberty, the suffering of severe and extreme physical and emotional harm, pain and distress, as well as humiliation and general impairment of physical and mental health and well being, in an amount not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000).

33.     Accordingly, pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiff is entitled to receive from the DA Defendants and the City the damages suffered as a result of the above described conduct, not as yet precisely determined but believed to be approximately twenty eight million dollars ($28,000,000), as well as attorney's fees associated with the action, and punitive and exemplary damages in the amount of fifteen million dollars ($15,000,000).

**AS AND FOR A SECOND CAUSE OF ACTION**
**Retention, Hiring and Supervision of Defendant Morris by**
**the City and the DA Defendants**

34.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

35.     In hiring and employing Defendant Morris, the DA Defendants and the City hired and employed a prosecutor who was overly-aggressive and hostile to Plaintiff,

and had a custom and practice of violating criminal Defendants' constitutional rights. The DA Defendants and the City hired and employed a prosecutor who was willing to, and did, cut corners and disregard the constraints of her obligation to do justice and exercise proper prosecutorial discretion. Specifically, the DA Defendants and the City hired and employed Morris, who was willing to and did prosecute and pursue charges against Plaintiff which she knew were unsubstantiated, and for which no true bill indictment was ever filed, as well as engaging in an improper and negligent investigation, preventing a speedy trial, improperly attempting to obtain a plea, and pursuing of charges and evidence in a solely retributive manner. The DA Defendants and the City had an obligation to exercise due and ordinary care in hiring, employing and supervising assistants. The DA Defendants' and the City's obligation included screening and monitoring assistants' prosecutorial actions and ensuring that proper procedures were followed, including the filing of a signed true bill indictment, informing the court of relevant binding precedent, not violating speedy trial time and agreeing to dismiss cases where speedy trial time has been exceeded, and not charging individuals with criminal conduct knowing that it is untrue and false, and solely in retribution for not accepting and earlier plea offer; all of which Defendant Morris did regarding the instant Plaintiff and was successful in doing due to the lack of proper oversight and supervision, and her improper hiring and improper allowing of her employment to continue. DA Defendants and the City knew or should have known, to a moral certainty, that Defendant Morris was overzealous in her prosecution and investigation, and disregarded the obligation to exercise due prosecutorial discretion and to act without violating individuals' constitutional rights. The New York County District Attorney's Office, as well as other

District Attorneys' Offices in New York City, particularly in and around the time of the Plaintiff's prosecution, has a long history of the types of constitutional violations described herein, and a failure to supervise, correct and install policies and procedures to prevent those violations. The DA Defendants and the City knew or should have known, to a moral certainty, that Defendant Morris was proceeding with a prosecution in which no signed true bill indictment had been filed, and upon information and belief, may never have been actually obtained, and for which a proper investigation would have revealed that no kidnapping in the first degree occurred, and a prosecution in which Defendant Morris knew that no kidnapping in the first degree occurred, but was charged solely in retribution for not accepting a plea of probation.

36.    Had the DA Defendants and the City properly exercised due and ordinary care in hiring, employing and supervising Defendant Morris in connection with the prosecution of Plaintiff, the prosecution would not have proceeded to trial.

37.    As a direct and proximate cause of the carelessness, recklessness and negligence of the DA Defendants and the City in hiring, employing and supervising Defendant Morris, Plaintiff was caused to be tried and wrongfully convicted, and sentenced and spent over 15 years in New York State and federal custody (as a result of the state conviction).

38.    The Defendants' actions, including those of the DA Defendants, the City and Defendant Morris, deprived Plaintiff of his constitutionally protected rights, privileges and immunities under the Fourteenth Amendments to the Constitution of the United States of America to be free from the deprivation of liberty without due process of law. The unlawful and improper actions of those Defendants caused Plaintiff's detention

of over 15 years, and were taken under color of state law. Those Defendants knew or should have known that this conduct was contrary to well established and incontrovertible constitutional law and principles and statutory rights.

39.    Throughout the events recited herein the Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, specifically the Fourth and/or Fourteenth Amendments to the Constitution.  As a result of these actions, the Defendants individually and/or vicariously by and through their agents, servants, and/or employees, deprived plaintiff of the rights, privileges and immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.

40.    These acts taken by the Defendants were wrongful, reckless and intentional. The actions of Defendants, in depriving Plaintiff of his Constitutional rights, were willful and malicious and the force used excessive. They were taken in bad faith, with a deliberate indifference to the Plaintiff's constitutional rights and with the intent to harm Plaintiff.  These actions were part of a policy, practice and custom that so deprived plaintiff of his Constitutional rights.

41.    As a result of the above described conduct by the DA Defendants and the City, Plaintiff has been harmed, due to the prolonged deprivation of his liberty, the suffering of severe and extreme physical and emotional harm, pain and distress, as well as humiliation and general impairment of physical and mental health and well being, in an amount not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000).

42.     Accordingly, pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiff is entitled to receive from the DA Defendants and the City, the damages suffered as a result of the above described conduct, not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000), as well as attorney's fees associated with the action, and punitive and exemplary damages in the amount of fifteen million dollars ($15,000,000).

## AS AND FOR A THIRD CAUSE OF ACTION
### Improper and Illegal Investigation by Defendant Morris

43.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

44.     Defendant Morris engaged in a wholly improper investigation of Plaintiff falling entirely beyond and outside of her role as a prosecutor. Defendant Morris took it upon herself to improperly engage in a police-type investigation. As part of this wholly improper, negligent, grossly negligent and recklessly conducted investigation, Defendant Morris, in a vindictive and retributive manner, sought to increase the charge against Plaintiff to kidnapping in the first degree, a charge that carries a mandatory minimum sentence of 15 years, shortly after offering the Plaintiff a plea with a probationary sentence, which the Plaintiff declined. By this investigation, Defendant Morris violated Plaintiff's constitutional rights. Defendant Morris deliberately and recklessly, as well as negligently and grossly negligently, failed to conduct a constitutionally adequate criminal investigation, thereby depriving Plaintiff of his Fourteenth Amendment right not to be deprived of liberty without due process of law and to a fair criminal trial.

45.     Specifically, Defendant Morris failed to reveal and investigate exculpatory evidence including witnesses who were present at the time and location where the

complainant was allegedly held, but did not see him at that location. After determining to undertake an investigation of Plaintiff's alleged actions, Defendant Morris deliberately and recklessly failed to conduct it in a constitutionally adequate manner. Defendant Morris engaged in an improper acquisition, manufacturing and hiding of evidence in an attempt to charge Plaintiff with kidnapping in the first degree after Plaintiff rejected her lesser plea offer that included a probationary sentence. This included, but was not limited to, the acquisition and manufacture of evidence, hiding of contrary exculpatory evidence, and failure to uncover fully, review and follow up on exculpatory evidence, as to the time period that the complainant was alleged to have been restrained, such as obtaining, procuring and facilitating false witness statements on this issue while failing to reveal and investigate the witnesses and their actual and true statements. Prior to this improper investigative conduct, probable cause did not exist for the first degree charge, and the grand jury had returned an indictment, (to the extent that a true bill issued at all as a result of the first grand jury presentment), only as to lesser counts. This police-type investigatory action was taken by Defendant Morris prior to the probable cause determination on the charge of kidnapping in the first degree. It was taken as part of an investigation by her into charges not contained in the initial indictment.

46.     Had Defendant Morris not engaged in this improper, faulty and overzealous investigation she would have learned and realized that Plaintiff did not commit the crime of kidnapping in the first degree, and indeed two independent delivery people were present at the location where the complainant was allegedly held and did not observe anyone so restricted or even present. As a direct and proximate result of the Defendants' actions, Plaintiff was wrongly convicted and imprisoned for over 15 years,

and suffered the other grievous and continuing injuries and damages as set forth above. Plaintiff is innocent of kidnapping in the first degree, the prosecution was terminated in his favor by the Dismissal Decision, but only after he served over 15 years in prison.

47.    Defendant Morris' actions to deprive Plaintiff of his liberty without probable cause were in violation of clearly established constitutional law, and no reasonable State actor at the time would have believed that their actions were lawful. These acts were wrongful, reckless and intentional. The actions, in depriving Plaintiff of his Constitutional rights, were willful and malicious. They were taken in bad faith and with the intent to harm and harass Plaintiff.

48.    As a result of the above described conduct by Defendant Morris, Plaintiff has been harmed, due to the prolonged deprivation of his liberty, the suffering of severe and extreme physical and emotional harm, pain and distress, as well as humiliation and general impairment of physical and mental health and well being, in an amount not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000).

49.    Accordingly, pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiff is entitled to receive from Defendant Morris the damages suffered as a result of the above described conduct, not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000), as well as attorney's fees associated with the action, and punitive and exemplary damages in the amount of fifteen million dollars ($15,000,000).

### AS AND FOR A FOURTH CAUSE OF ACTION
### Improper and Illegal Investigation by Defendant Police Officers

50.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

51.     Defendant Police Officers performed a wholly improper investigation of Plaintiff.  As part of this wholly improper, negligent, grossly negligent and recklessly conducted investigation, the Defendant Police Officers arrested and led to the prosecution of Plaintiff for charges for offenses he did not commit. By this investigation, the Defendant Police Officers violated Plaintiff's constitutional rights under 42 U.S.C. § 1983 The Defendant Police Officers deliberately and recklessly failed to conduct a constitutionally adequate criminal investigation, thereby depriving Plaintiff of his Fourteenth Amendment right not to be deprived of liberty without due process of law and to a fair criminal trial.

52.     Specifically, the Defendant Police Officers failed to reveal, and investigate, exculpatory evidence including witnesses who were present at the time and location where the complainant was allegedly held, but did not see him at that location.

53.     Had the Defendant Police Officers not engaged in this improper, faulty and overzealous investigation they would have learned and realized that Plaintiff did not commit the crime of kidnapping in the first degree, and indeed two independent delivery people were present at the location where the complainant was allegedly held and did not observe anyone so restricted or even present. As a direct and proximate result of the Defendant Police Officers' actions, Plaintiff was wrongly convicted and imprisoned for over 15 years, and suffered the other grievous and continuing injuries and damages as set forth above.

54.     These acts taken by the Defendant Police Officers were wrongful, reckless and intentional. The actions of the Defendant Police Officers, in depriving Plaintiff of his Constitutional rights, were willful and malicious, were taken in bad faith, with a

deliberate indifference to the Plaintiff's constitutional rights and with the intent to harm Plaintiff. These actions were part of a policy, practice and custom that entirely deprived plaintiff of his Constitutional rights.

55.    As a result of the above described conduct by Defendant Police Officers, Plaintiff has been harmed due to the prolonged deprivation of his liberty, the suffering of severe and extreme physical and emotional harm, pain and distress, as well as humiliation and general impairment of physical and mental health and well being, in an amount not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000).

56.    Accordingly, pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiff is entitled to receive from the Defendant Police Officers the damages suffered as a result of the above described conduct, not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000), as well as attorney's fees associated with the action, and punitive and exemplary damages in the amount of fifteen million dollars ($15,000,000).

## AS AND FOR A FIFTH CAUSE OF ACTION
### Failure to Intervene to Prevent the Violation of Civil Rights

57.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

58.    As a result of the afore-described actions, the City, individually, and/or vicariously, by and through its agents, servants and/or employees and the DA Defendants and the Defendant Police Officers, individually and as a group, failed to intervene to prevent or end the unlawful and unconstitutional conduct inflicted upon plaintiff by Defendant Morris.

59.    As a result of the foregoing, Defendant City, individually, and/or vicariously, by and through its agents, servants and/or employees and the DA Defendants and Defendant Police Officers, displayed a deliberate indifference to Plaintiff's constitutional rights.

60.    These acts taken by the foregoing Defendants were wrongful, reckless and intentional. The actions of the foregoing Defendants, in depriving Plaintiff of his Constitutional rights, were willful and malicious, were taken in bad faith, with a deliberate indifference to the Plaintiff's constitutional rights and with the intent to harm Plaintiff. These actions were part of a policy, practice and custom that so deprived plaintiff of his Constitutional rights.

61.    As a result of the above described conduct by Defendants the City, the DA Defendants and the Defendant Police Officers, Plaintiff has been harmed, due to the prolonged deprivation of his liberty, the suffering of severe and extreme physical and emotional harm, pain and distress, as well as humiliation and general impairment of physical and mental health and well being, in an amount not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000).

62.    Accordingly, pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiff is entitled to receive from the City, the DA Defendants and the Defendant Police Officers the damages suffered as a result of the above described conduct, not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000), as well as attorney's fees associated with the action, and punitive and exemplary damages in the amount of fifteen million dollars ($15,000,000).

## AS AND FOR A SIXTH CAUSE OF ACTION
### Retention, Hiring and Supervision Against the City

63.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

64.    Defendant City, by and through their agents, servants and/or employees, carelessly, negligently and recklessly hired applicants for the position of Assistant District Attorney and Police Officer, including the DA Defendants and Defendant Police Officers.

65.    Defendant City, by and through their agents, servants and/or employees, carelessly, negligently and recklessly trained the DA Defendants and Defendant Police Officers.

66.    Defendant City, by and through their agents, servants and/or employees, negligently and recklessly supervised, controlled, managed, maintained inspected, reprimanded and punished the activities of its Assistant District Attorneys and Police Officers, particularly the DA Defendants and Defendant Police Officers.

67.    Defendant City, by and through their agents, servants and/or employees, negligently and recklessly retained in its employ, Assistant District Attorneys and Police Officers clearly unfit for the position who acted in an illegal, unprofessional, negligent and/or deliberate manner in carrying out their official duties and/or responsibilities, particularly the DA Defendants and Defendant Police Officers.

68.    The occurrence and injuries sustained by Plaintiff were caused solely by, and as a result of the malicious, reckless, negligent and/or intentional conduct of the Defendant City, its agents, servants and/or employees as set forth above, without any

provocation, or reasonable provocation, on the part of the Plaintiff contributing thereto, specifically, the negligent and reckless manner in which said Defendant City hired, trained, supervised, controlled, managed, maintained, inspected, retained, reprimanded and punished its Assistant District Attorneys and Police Officers and respective departments.

69.    As a result of the above described conduct by Defendant City, Plaintiff has been harmed, due to the prolonged deprivation of his liberty, the suffering of severe and extreme physical and emotional harm, pain and distress, as well as humiliation and general impairment of physical and mental health and well being, in an amount not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000).

70.    Accordingly, pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiff is entitled to receive from Defendant City the damages suffered as a result of the above described conduct, not as yet precisely determined but believed to be approximately twenty-eight million dollars ($28,000,000), as well as attorney's fees associated with the action, and punitive and exemplary damages in the amount of fifteen million dollars ($15,000,000).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully demands judgment:

1.    awarding Plaintiff the compensatory damages sought herein in the amount not as yet precisely determined but believed to be approximately Twenty-Eight Million dollars ($28,000,000);

2.    awarding Plaintiff punitive damages in the amount of Fifteen Million dollars ($15,000,000);

3.      awarding Plaintiff attorney's fees, and the reasonable costs and expenses

of this action; and

4.      granting Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
       February 19, 2013

SULLIVAN GARDNER P.C.

By:_____
Brian Gardner (BG 0006)
Attorneys for Plaintiff
7 East 20th Street
New York, New York 10003
(212) 687-5900