UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **NOV 2 8 2016** ★

**BROOKLYN** OFFICE

------------------------------------------------------------X

Giuseppe D'Alessandro,

                 Plaintiff,

     -against-

City of New York et al.,

                Defendant.

------------------------------------------------------------X

**Memorandum and Order**

13-CV-930 (SLT)

After serving fourteen and a half years of a fifteen year sentence for kidnapping,

Giuseppe D'Alessandro's conviction was overturned by the New York Supreme Court,

Appellate Division, First Department on statutory speedy trial grounds. D'Alessandro

commenced this action under 42 U.S.C. § 1983, alleging that he was wrongfully convicted as a

result of various deprivations of his constitutional rights by the Manhattan District Attorney's

Office, former District Attorney Robert M. Morgenthau, former Assistant District Attorney

Brenda Morris, New York Police Department Detective Anthony Vazquez, and the City of New

York (the "City"). Currently before the Court are motions by the City on behalf of itself and

Detective Vazquez and by the defendants, the District Attorney's Office on behalf of defendants

Morgenthau and Morris (together the "DA Defendants") to dismiss the complaint for failure to

state a claim, and a Federal Rules of Civil Procedural Rule 11 motion for sanctions by the City

against D'Alessandro's counsel. For the following reasons, all of D'Alessandro's claims are

dismissed and the City's motion for sanctions is denied.

### LEGAL STANDARD

Under the now well-established *Twombly* standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The Supreme Court has clarified that *Twombly* sets out a two-pronged approach for district courts considering motions to dismiss under Rule 12(b)(6). *Id.* District courts should first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court is generally limited to the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). It may also consider "matters of which judicial notice may be taken, or ... documents either in plaintiff[']s[] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

# FACTUAL BACKGROUND

With this standard in mind, the following facts, which are drawn from D'Alessandro's amended complaint, are deemed true for purposes of the motions to dismiss.

## Alleged Underlying Crime

In 1989, D'Alessandro worked as a manager of a restaurant. (Compl. ¶ 13.) After a "heated argument" with an employee suspected of stealing $3,000 from the restaurant, the employee accused D'Alessandro of confining him to the restaurant's basement for over twelve hours and seeking return of the $3,000. (*Id.*) D'Alessandro denied that he ever confined the employee to the basement. (*Id.*)

## Indictment and Superseding Indictment

In August 1989, D'Alessandro was arrested on charges of kidnapping and prosecuted by the New York County District Attorney's Office, led, at the time, by Defendant Morgenthau. (Compl. ¶¶ 13-14.) In October 1989, Assistant District Attorney Brenda Morris ("ADA Morris"), who was assigned to prosecute the case, presented the case to the grand jury. (*Id.*) On November 3, 1989, ADA Morris "entered into the court files that a true bill was returned, indicting Plaintiff for kidnapping in the second degree and related offenses," although "a signed copy of the indictment was never filed with the court and does not exist anywhere in the Queens[1] [*sic*] County court system or the District Attorney's office." (Compl. ¶ 14.) D'Alessandro alleges that "[t]here is no, and never was any, formal evidence of a true bill voted against D'Alessandro in 1989." (*Id.*)

The prosecution made a plea offer to D'Alessandro, which provided that D'Alessandro would receive only probation in exchange for a plea of guilty, however D'Alessandro,

---

[1] Presumably, this is a typographical error. D'Alessandro was prosecuted in Manhattan, in New York County, not in Queens County.

maintaining his innocence, rejected the offer. (Compl. ¶ 15.) ADA Morris resubmitted the case

to a new grand jury and obtained a superseding indictment which included a count of kidnapping

in the first degree – a charge that carries a mandatory minimum sentence of 15 years to life. (*Id.*)

### Speedy Trial Motion

D'Alessandro's counsel moved, in a pre-trial motion dated September 13, 1990, to

dismiss the superseding indictment on the grounds that statutory speedy trial time pursuant to

New York Criminal Procedure Law ("CPL") § 30.30 had run out. (Compl. ¶ 16.) D'Alessandro

argued that, among other things, all of the time from arrest to trial should be charged to the

People because they never produced grand jury minutes. The trial court denied the motion in a

January 7, 1991 decision, in part relying on a representation from ADA Morris that the 196 day

delay in providing the grand jury minutes to D'Alessandro's counsel was excludable. (Compl.

¶¶ 16-17.) In fact, eight months earlier, on May 8, 1990, the New York Court Appeals had

decided the case of *People v. McKenna*, in which it held that "the People's [delay in] provid[ing]

the Grand Jury minutes … is a delay that should be counted against them in determining whether

their [statutory speedy trial] obligation[s] under CPL 30.30 has been satisfied." 76 N.Y.2d 59, 66

(1990).

### Trial, Sentencing, and Direct Appeal

On June 25, 1991, a guilty verdict was entered in New York State Supreme Court,

County of New York, following a jury trial. (Compl. ¶ 18.) However, the trial court granted

D'Alessandro's motion pursuant to CPL § 330.30, to set aside the verdict, on the grounds of

prosecutorial misconduct in the summation. (*Id.*)

The District Attorney's Office appealed, and on December 22, 1993, the New York

Supreme Court, Appellate Division, First Department, reversed the trial court and reinstated the

jury's verdict. *People v. D'Alessandro*, 184 A.D.2d 114, 591 N.Y.S.2d 1001 (App. Div. 1st Dep't 1992). The First Department explained that the prosecutor "on occasion did exceed the bounds of legitimate fair comment as when, for example, she suggested that a witness might be exposing himself to danger by testifying, appealed to the jurors' generalized fear of crime, and their sympathies, and vouched for the credibility of the People's witnesses." *Id.* (citations omitted). However, the Appellate Division concluded that the summation "was within the range of acceptability, and it cannot be reasonably found that [the prosecutor] tried to depict defendant as a mobster who merited punishment for his general character and intimidation of witnesses rather than for the specific crimes with which he was charged." *Id.* Because the First Department found the proof of guilt "overwhelming," it concluded that any misconduct was harmless and reversed the trial court's order granting the motion to vacate the conviction. *Id.*

On April 20, 1993, D'Alessandro was sentenced to the minimum of fifteen years in prison. (Compl. ¶ 19.) According to D'Alessandro, the sentencing judge "expressed its belief that the sentence was overly harsh, but that it was constrained by the statutory mandatory minimum sentence." (*Id.*)

On August 22, 1996, the Appellate Division affirmed D'Alessandro's conviction on direct appeal, finding that the evidence was "overwhelming," any prosecutorial misconduct was harmless error, and the jury's determination as to fact and credibility were supported by the record. *People v. D'Alessandro,* 230 A.D.2d 656, 656–57 (N.Y. App. Div. 1st Dep't 1996). The Appellate Division further found that D'Alessandro's challenges to the jury instructions were unpreserved, and that the:

> available record indicates that defendant received the effective assistance of
> counsel, trial counsel having made appropriate pre-trial, trial and post-trial motions
> and applications, vigorously cross-examined the People's witness and presented
> witnesses in support of the defense position that there had been no abduction or

> restraint of the complainant, and interposed numerous objections to summation
> comments by the prosecutor. Trial counsel's failure to object to the jury charge on
> kidnaping in the first degree, which in any event does not constitute reversible error
> in the circumstances, does not render trial counsel's representation less than
> meaningful.

*Id.* The New York Court of Appeals denied leave to appeal on November 29, 1996. *People v. D'Alessandro*, 89 N.Y.2d 863 (1996).

### *Writ of Error Coram Nobis, Parole, and Writ of Habeas Corpus*

D'Alessandro filed a *pro se* petition for a *writ of error coram nobis* asserting ineffective assistance of appellate counsel in connection with D'Alessandro's statutory speedy trial rights in August 1999, which the Appellate Division denied on May 11, 2000. *People v. D'Alessandro*, 272 A.D.2d 1002, 2000 WL 1110871 (N.Y. App. Div. 1st Dep't 2000). D'Alessandro filed a second petition for a *writ of error coram nobis* on June 27, 2008, raising a slightly different statutory speedy trial based ineffective assistance of appellate counsel argument. That petition was construed as a motion for reargument and denied by the Appellate Division on August 19, 2008, *People v. D'Alessandro*, 2008 NY Slip Op 80474 [u] (N.Y. App. Div. 1st Dep't Aug. 19 2008), however the New York Court of Appeals reversed on October 27, 2009, after finding that the petition raised different grounds than D'Alessandro's initial *pro se* application and remanded to the Appellate Division to consider the application on the merits, *People v. D'Alessandro*, 13 N.Y.3d 216, 218, 918 N.E.2d 126 (2009). On remand, in an unpublished opinion dated June 29, 2010, Appellate Division granted the petition for a *writ of error coram nobis. People v. D'Alessandro*, 2010 NY Slip Op 75591(U) (N.Y. App. Div. 1st Dep't June 29, 2010). The Appellate Division vacated D'Alessandro's conviction and dismissed the indictment on the grounds that appellate counsel was ineffective on his direct appeal of the conviction for failing to raise the "clear-cut and completely dispositive" statutory speedy trial argument. The District

Attorney's application for leave to appeal was denied by the Court of Appeals on September 29, 2010. *People v. D'Alessandro*, 2010 NY Slip Op 98765(U) (N.Y. Sept. 29, 2010).

In November 2007, D'Alessandro was released on parole after serving 14 and a half years of his sentence. (Compl. ¶ 20.) Because he was not a citizen, following his release, he was detained by the Department of Homeland Security and remained in federal custody until his release was obtained by way of a petition for a writ of habeas corpus on April 3, 2009. *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 372 (W.D.N.Y. 2009).

### *Instant Civil Case*

D'Alessandro commenced the instant action on February 21, 2013, pursuant to 18 U.S.C. § 1983. D'Alessandro alleges that his rights were violated by DA Defendants and the City because they failed "to maintain an adequate system ... by which controlling developments in appellate law [would be] distributed to assistant district attorneys" and maintained a policy of deliberate indifference to the unconstitutional "tactics" of the assistant district attorneys. (Amd. Compl. ¶¶ 25-36). He alleges that ADA Morris's conduct in "proceeding with an illegal investigation of the Plaintiff ..., despite the fact that a signed indictment containing such charge was never obtained," "refus[ing] to disclose grand jury minutes to the trial court, for hundreds of days, in an attempt to ... exert undue influence to accept the offered plea," obtaining a superseding indictment as "retribution against the Plaintiff ... [for] failure to plead to the initial (false) charges," hiding unspecified exculpatory evidence, and "procuring and facilitating false witness statements ... while failing to reveal and investigate the witnesses and their actual and true statements" were examples of such unconstitutional tactics. *Id.* Further, he alleges that the District Attorney and City negligently retained, hired, and supervised ADA Morris, and failed to intervene in the misconduct of the DA Defendants and Detective Valquez. (Amd. Compl. ¶¶ 37-

45, 60-73). D'Alessandro alleges that ADA Morris and Detective Vazquez violated his rights by conducting "a wholly improper investigation" when they "failed to reveal and investigate exculpatory evidence including witnesses who were present at the time and location where the complainant was allegedly held, but did not see him at that location." (Amd. Compl. ¶¶ 46-59.)

## DISCUSSION

### *Absolute Prosecutorial Immunity Bars Claims Against the DA Defendants in their Individual Capacities*

The DA Defendants move to dismiss claims brought against them in their individual capacities on the grounds that such claims are barred by the doctrine of absolute prosecutorial immunity.

Absolute prosecutorial immunity immunizes district attorneys acting in their individual capacities from claims arising out of the manner "in which [they] performed [their] role as an advocate by initiating and pursing a criminal prosecution." *Covington v. City of New York,* No. 98 Civ. 1285(MGC), 1999 WL 739910, at *7 (S.D.N.Y. Sept. 22, 1999). Prosecutorial immunity is so broadly defined that "virtually all acts, regardless of motivation, associated with the function as an advocate" will be accorded absolute immunity. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotation marks and citations omitted). In determining whether absolute immunity is available, this Court applies a "functional approach" and looks to the "nature of the function performed" by the prosecutor defendants. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). If the conduct is "intimately associated with the judicial phase of the criminal process," the prosecutor defendants are entitled to absolute prosecutorial immunity. *Imbler v. Pachtman,* 424 U.S. 409, 430–431 (1976). Conversely, immunity is not available for "those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings," *Hill*, 45 F.3d at 661 (citing

*Buckley*, 509 U.S. at 270), or where the prosecutor's acts are "manifestly or palpably beyond his authority," *Spalding v. Vilas,* 161 U.S. 483, 498 (1896), or where he "proceeds in the clear absence of all jurisdiction," *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir. 1987).

All of D'Alessandro's claims against the DA Defendants in their individual capacities arise out of the DA Defendants' prosecutorial actions. D'Alessandro's claims that ADA Morris conducted an improper investigation during the prosecution, failed to turn over exculpatory evidence, misinformed the trial judge about the law, failed to promptly turn over grand jury minutes, and pursued a superseding indictment are barred by absolute immunity because such conduct is "prosecutorial." *Buckley*, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial ... are entitled to the protections of absolute immunity ... [including investigating evidence] after a decision to seek an indictment has been made."); *Jones v. City of New York*, 988 F. Supp. 2d 305, 312 (E.D.N.Y. 2013) (decisions about investigation, disclosure and use of information, and to continue prosecuting plaintiff "were exercises of legal judgment undertaken in preparation for trial."); *Robinson v. Rome*, No. 11-CV-1411 NGG LB, 2011 WL 1541044, at *3 (E.D.N.Y. Apr. 20, 2011) (ADA's alleged failure to sufficiently investigate the case, failure to turn over exculpatory evidence, and decisions to rely on false evidence are "'prosecutorial' – as opposed to 'investigative' – in nature."); *Kuar v. Mawn*, No. 08-CV-4401 JFBETB, 2011 WL 838911, at *5 (E.D.N.Y. Mar. 4, 2011) ("suborning perjury, falsifying evidence, destroying and withholding exculpatory evidence, and coercing plaintiff's plea" "all occurred in the course of [the prosecutor's] role as an advocate and fall squarely within the scope of absolute immunity.").

D'Alessandro argues, relying on *Harris v. Muchnicki*, that ADA Morris's failure to turn over grand jury minutes was "administrative." 101 F.3d 702 (6th Cir. 1996) (unpublished).

However, D'Alessandro misconstrues *Harris*. In *Harris*, the Sixth Circuit affirmed, on other grounds, a district court's decision dismissing, as barred by prosecutorial immunity, claims against an Ohio assistant attorney general who released grand jury minutes to a *federal* agency that was conducting its own investigation into the plaintiff. *Id*. at *2. The Sixth Circuit did not reach the question of whether prosecutorial immunity attached because, more fundamentally, the plaintiff failed to state any claim under § 1983, because the release of grand jury minutes under the circumstances of that case did not violate any federal constitutional rights. *Id*. Rather, it is clear that a prosecutor's delay in turning over discovery materials is protected by prosecutorial immunity. *Hill*, 45 F.3d at 662 (A prosecutor's failure to turn over material as required by *Brady, v. Maryland,* 373 U.S. 83 (1963), is protected by absolute immunity because such an "omission occur[s] after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function."); *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (prosecutors are entitled to immunity for "administrative obligation[s] ... that [are] directly connected with the conduct of a trial ... unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like."); *Jones*, 988 F. Supp. 2d at 317 ("Tasks directly connected with the prosecutor's basic trial advocacy and prosecutorial duties—including *Brady* decisions—should ... be treated as 'prosecutorial conduct.'"); *Mistretta v. City of New York*, No. 98-CV-2589 (ILG), 1999 WL 1129618, at *5 (E.D.N.Y. Oct. 15, 1999) (prosecutors are "entitled to absolute immunity from suit" for "failure to disclose exculpatory evidence").

Likewise, D'Alessandro's failure to train and deliberate indifference claims against DA Morgenthau are prosecutorial in nature. In *Van de Kamp*, the Supreme Court extended prosecutorial immunity to certain administrative tasks, such as "supervision or training or

information-system management" because these kinds of "administrative obligation[s] ... [are] directly connected with the conduct of a trial." 555 U.S. at 344. The Court distinguished administrative obligations such as "workplace hiring, payroll administration, the maintenance of physical facilities, and the like," which are not subject to prosecutorial immunity, from administrative activities that "necessarily require legal knowledge and the exercise of related discretion, *e.g.,* in determining what information should be included in the training or the supervision or the information-system management." *Id.* In the latter cases, the Court reasoned it would be anomalous for an assistant prosecutor to be immune for the actual prosecutorial error, while his or her supervisor would be held liable for failing to adequately train and supervise. *Id.* at 345. D'Alessandro's claims against DA Morgenthau are predicated on his alleged failure to train his assistants on emerging legal issues and his alleged countenancing or even encouraging overzealous prosecutions. Accordingly, under *Van de Kamp*, DA Morgenthau is shielded from such claims because although they center on his "administrative" obligations, they are of a prosecutorial nature. Given that all of D'Alessandro's individual capacity claims against DA Defendants arise out of their prosecutorial actions, DA Defendants are shrouded from D'Alessandro's claims by the cloak of prosecutorial immunity.

D'Alessandro argues that DA Defendants are not entitled to *any* prosecutorial immunity because ADA Morris acted "in the clear absence of all jurisdiction." He speculates that because "a signed copy of the indictment was never filed with the court," there was never a "true bill" returned by the grand jury. (Compl. ¶ 14.) Thus, he argues that prosecutorial immunity never attached because there was never jurisdiction to prosecute. Even assuming that no signed copy of the indictment was ever filed, D'Alessandro is mistaken that prosecutorial immunity did not attach.

Prosecutors are absolutely immune from § 1983 liability where "they have at least a semblance of jurisdiction." *Barr*, 810 F.2d at 361. The Second Circuit has explained that "holding that a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits[] would do violence to [the] spirit [of prosecutorial immunity, t]he purpose of [which] is to give to public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities." *Id.* "In determining whether the prosecutor should ... be denied absolute immunity in a specific case, [courts] look to the statutes that might have authorized the prosecution, and deny absolute immunity if there was no colorable authority." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal citation omitted).

Here, "New York Criminal Procedure Law clearly provides the jurisdictional authority for the District Attorney to seek plaintiff's indictment," *Smith v. Gribetz*, 958 F. Supp. 145, 153 (S.D.N.Y. 1997) (citing N.Y. Crim. Proc. Law § 190). Article 190 of the New York Criminal Procedure Law governs grand juries, and subsection 190.55 provides that a "district attorney *must* submit to a grand jury evidence concerning a felony allegedly committed by a defendant," where a felony complaint has been filed. N.Y. Crim. Proc. Law § 190.55. "New York Penal law, as cited in the indictment, [*inter alia*, N.Y. Penal Law § 135.20, which criminalizes kidnapping,] furnishes the substantive basis for the charges against [D'Alessandro]." *Smith*, 958 F. Supp. at 153 (S.D.N.Y. 1997) (rejecting the contention that a District Attorney did not have prosecutorial immunity where he allegedly prosecuted the plaintiff for "noncriminal activities," where the state's laws furnished the basis for the charges in the indictment.) Given that the DA Defendants had authority to prosecute D'Alessandro for kidnapping under the New York Penal Law, there is no basis to conclude that they acted "in the absence of all jurisdiction."

Accordingly, his individual capacity claims against DA Defendants are dismissed as barred by absolute prosecutorial immunity.

### The Eleventh Amendment Bars Claims against DA Defendants in their Official Capacities

It is well-settled that claims against a state or municipal official in his official capacity are to be treated as claims against the respective state or municipality. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* Generally, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and "*not* a suit against the official personally." *Id.* at 166 (emphasis in original).

The Eleventh Amendment, which recognizes the States' sovereign immunity, protects the States from suits in federal courts unless they have waived their sovereign immunity or Congress has abrogated that immunity pursuant to Section 5 of the Fourteenth Amendment. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). However, the immunity does not extend to municipalities, such as New York City, which are political subdivisions and may be sued for deprivations of federal rights. *Id.*; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 & n.54 (1978).

It has long been recognized that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quotation marks and citation omitted). "With respect, however, to claims centering ... on the administration of the district

attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned." *Id.* "Where, as to such administrative matters, the district attorney acts as 'manager' of the District Attorney's office of one of New York City's constituent counties, he may be considered a municipal policymaker for the City of New York." *Id.*

Accordingly, Eleventh Amendment immunity extends to DA Morgenthau and ADA Morris, to the extent they are sued in their official capacity for their prosecutorial decisions – including ADA Morris's decisions to prosecute plaintiff, seek and obtain a superseding indictment, investigate the complainant's claims, turn over grand jury minutes, and make specific arguments to the trial court, and DA Morgenthau's decision to train or not train assistant district attorneys about recent precedent. To the extent that any official capacity claims against the DA Defendants are not barred by the Eleventh Immunity, those claims are construed as claims against the municipality and analyzed below.

### *False Arrest Claims against Detective Vazquez are Dismissed because Detective Vazquez Acted with Probable Cause*

D'Alessandro alleges that Detective Vazquez arrested him without probable cause. According to the amended complaint, Detective Vazquez arrested D'Alessandro on the word of the alleged victim of the kidnapping without first performing an adequate investigation into two delivery persons who visited the restaurant's basement on the day in question and allegedly did not see the complainant tied up.

Although D'Alessandro does not articulate under precisely what theory Detective Vazquez deprived him of his constitutional rights, he appears to be making a false arrest claim. However, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995).

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* at 119 (citations and internal quotation marks omitted). Detective Vazquez arrested D'Alessandro based on a statement given by the complainant – the alleged victim of a kidnapping. It is well settled that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest." *Id.*

Generally, "[t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992). D'Alessandro asserts, citing *Brodie v Fuhrman*, that a complainant's statement, alone, cannot support probable cause if "there was a relationship – in this case work relationship – between the Plaintiff and his accuser." (Opp'n Br. to City Mtn. at 21) (quoting *Brodie v Fuhrman*, 07-cv-4212 (DGT) (VVP), Dkt No. 49 at *15-17 (E.D.N.Y. March 29, 2010) (finding probable cause to arrest accused based on victim statement despite antagonistic relationship between accuser and accused.)) However, "probable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although "[t]here are circumstances ... when a victim's veracity can be called into question," *Singer*, 63 F.3d at 119, for example, where there is "a prior relationship between the victim and the accused that *gives rise to a motive for a false accusation* ... and [this relationship] is known to the arresting officer," *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) (emphasis added), the mere fact that accused and accuser know each other does not necessarily

cast doubt on an alleged victim's complaint. *See also Kanderskaya v. City of New York*, 11 F.

Supp. 3d 431, 437 (S.D.N.Y. 2014) (finding that the fact that the complainant and plaintiff were

in the process of divorcing did not raise the specter of false claims, but rather lent credibility to

the victim's allegations that his wife threatened him). Indeed, often, the fact that the accused and

accuser know each other cuts the other way, by adding credibility to the identification. *See, e.g.,*

*Hanniford v. City of New York*, No. 12-CV-0040 PKC SMG, 2014 WL 7801320, at *5 (E.D.N.Y.

Dec. 23, 2014) *R&R adopted*, 2015 WL 588766 (E.D.N.Y. Feb. 11, 2015) ("Prior familiarity

with a suspect may in fact be a compelling factor contributing to the reliability of an

identification.").

Here, there was no reason for Detective Vazquez to believe – based solely on the fact that

the complainant worked with D'Alessandro – that the complainant had any motive to falsely

accuse D'Alessandro. Indeed, D'Alessandro does not allege that he and the complainant had an

acrimonious relationship before he accused the complainant of stealing money from the register

and the complainant, in turn, accused him of binding and threatening him in the basement.

D'Alessandro further alleges that Vazquez knew of these two delivery persons and failed

to investigate further.[2] However, Detective Vazquez was "not required to explore and eliminate

every theoretically plausible claim of innocence before making an arrest." *Caldarola v.*

*Calabrese*, 298 F.3d 156, 167-68 (2d Cir. 2002); *see Curley v. Village of Suffern*, 268 F.3d 65,

70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate

plaintiff's version of events more completely, the arresting officer does not have to prove

---

[2] In a conclusory fashion, the complaint also alleges that the police suppressed the
deliverymen's identities, however this assertions is belied by the record before the Court. In its
2010 decision, the Appellate Division recited that the "[t]wo deliverymen testified[, for the
defense,] that they went down to the basement on the day in question and did not see [the
complainant.]" *D'Alessandro*, 2010 NY Slip Op 75591(U), at *2.

plaintiff's version wrong before arresting him."). Indeed, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)). Thus, Detective Vazquez had probable cause to arrest D'Alessandro and, accordingly, D'Alessandro's § 1983 false arrest claims against Detective Vazquez are denied.[3]

### *Claims Against the City are Dismissed Because Plaintiff has Failed to Allege a Municipal Policy or Practice*

A municipality and its supervisory officials may not be held liable under section 1983 for the isolated unconstitutional acts of its employees based solely on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (recognizing that municipal liability attaches to individual policymakers "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"). Rather, to establish a section 1983 claim, D'Alessandro must demonstrate that the constitutional harm he suffered was the result of an official municipal policy or custom. *Monell*, 436 U.S. at 690-691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

---

[3] To the extent D'Alessandro is alleging a malicious prosecution claim, such a claim would also fail because there was probable cause to arrest and D'Alessandro does not allege any subsequent intervening facts. *See Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (recognizing probable cause as a complete defense to a claim of malicious prosecution); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (to state a malicious prosecution claim, "the groundless nature of the charges must be made apparent by the discovery of some intervening fact [after a lawful arrest]."). Moreover, "arresting officers generally are not subject to liability for malicious prosecution because the ultimate decision to prosecute rests with the prosecutor." *Nickey v. City of New York*, No. 11-CV-3207 RRM RLM, 2013 WL 5447510, at *8 (E.D.N.Y. Sept. 27, 2013) (citing *Myers v. Cnty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011).

practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). As the Supreme Court stated in *Connick*, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* at 1359. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To prevail on a failure-to-train theory, the plaintiff must show that the failure amounted to the policymaker's "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989) (alteration in *Connick*)). Ordinarily, to prevail on such a theory, the plaintiff must prove "[a] pattern of similar constitutional violations by untrained employees" that put decisionmakers on notice. *Id.* at 1360. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Alternatively, "in a narrow range of circumstances" such a claim can be proven under a 'single incident' theory, if there is "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an *obvious* potential for such a violation." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) (emphasis added). 'Single incident' liability only applies if a violation of constitutional rights is a "'highly predictable consequence'" and the need for training is "patently obvious." *Connick*, 131 S. Ct. at 1361 (quoting *Bryan Cnty*, 520 U.S. at 409).

To the extent that any of D'Alessandro's claims against individual defendants in their official capacities are not barred by the Eleventh Amendment, those claims are treated as claims against the municipality and are considered alongside D'Alessandro's claims against the City for

failure to train assistant district attorneys on their legal obligations and for deliberate indifference to the rights of criminal defendants.

D'Alessandro fails to show a pattern of similar violations. In *Connick* – a case in which the plaintiff's conviction was overturned after it was revealed that prosecutors had withheld exculpatory *Brady* material – the plaintiff attempted to meet his burden of identifying a pattern of *Brady* violations by pointing to four earlier convictions that had been overturned due to *Brady* violations. However, the Supreme Court found that those incidents were not sufficiently similar to the violation at issue to put the District Attorney on notice that specific training was necessary. Here, D'Alessandro cites, without explanation, numerous cases brought against the Manhattan District Attorney's Office around the same time as D'Alessandro's trial and conviction. (Opp'n Br. to City Mtn. at 8). However, none of the cases decided before D'Alessandro's June 1991 conviction involved facts even remotely similar to the case at bar, such that they would have put the District Attorney on notice that there was a need to train assistant district attorneys. *See Connick*, 131 S. Ct. at 1360 n.7 (explaining that "contemporaneous or subsequent conduct cannot establish a pattern of violations").[4] To the extent they are even relevant,[5] the cases cited by

_____

[4] In any event, none of the cases that post-date D'Alessandro's conviction are factually similar to the case at bar. *See People v. Colas*, 206 A.D.2d 183, 190 (N.Y. App. Div. 1st Dep't 1994) (a new trial was ordered because of "cumulative effect" of introduction of evidence of uncharged crimes and flawed identification procedures); *People v. Jarrells*, 190 A.D.2d 120, 126 (N.Y. App. Div. 1st Dep't 1993) (prosecutor improperly impeached defendant on cross-examination and failed to turn over a police voucher undermining the defense's ability to cross-examine the officer); *People v. Williams*, 7 N.Y.3d 15, 19 (N.Y. App. Div. 1st Dep't 2006) (affirming defendant's conviction after concluding that prosecutor's failure to timely disclose that a government witness was being investigated for perjury did not require more than limited reopening of a suppression hearing); *People v. Tolbert*, 198 A.D.2d 132, 133 (N.Y. App. Div. 1st Dep't 1993) (prosecutor made improper statements in summation).

[5] *People v. Coates*, 74 N.Y.2d 244, 249 (N.Y. App. Div. 1st Dep't 1989) (because defendant's right to counsel was violated at a line-up conducted by police officers requiring a new trial, the court did not reach claims of prosecutorial misconduct); *People v. Ortiz*, 33 A.D.3d 1044 (N.Y. App. Div. 3d Dep't 2006) (prosecution by Schenectady District Attorney).

D'Alessandro involve inflammatory or otherwise improper statements made by prosecutors during trial, typically during summation,[6] failures to turn over exculpatory evidence,[7] and

[6] *People v. Norton*, 164 A.D.2d 343, 356 (N.Y. App. Div. 1st Dep't 1990) (prosecutor improperly referred to alleged threats by defendant suggesting defendant caused victim's absence, where victim did not testify because he invoked his right against self-incrimination); *People v. Hansen*, 141 A.D.2d 417, 420 (N.Y. App. Div. 1st Dep't 1988) (prosecutor made repeated inflammatory comments in summation); *People v. Jimenez*, 102 A.D.2d 439, 444 (N.Y. App. Div. 1st Dep't 1984) (prosecutor made comments about improperly admitted evidence in summation); *People v. Vann*, 54 A.D.2d 356, 365 (N.Y. App. Div. 1st Dep't 1976) (prosecutor made improper comments about meeting with defendant in summation thereby making himself an unsworn witness); *People v. Dowdell*, 88 A.D.2d 239, 248 (N.Y. App. Div. 1st Dep't 1982) (prosecutor violated a court order on cross-examination, elicited hearsay, and vouched for police officer witnesses' credibility in summation); *People v. Ortiz*, 51 A.D.2d 710, 710 (N.Y. App. Div. 1st Dep't 1976) (prosecutor improperly referred to a defense counsel error in summation); *People v. Abdul-Malik*, 61 A.D.2d 657, 663-64 (N.Y. App. Div. 1st Dep't 1978) (prosecutor made prejudicial remarks in summation which drew attention to the fact that defendant had not taken the stand and made other remarks that amounted to impermissible buttressing); *People v. Bolden*, 82 A.D.2d 757, 757 (N.Y. App. Div. 1st Dep't 1981) (prosecutor made numerous errors during trial, including during an overly zealous cross-examination of defendant and in summation); *People v. Rivera*, 75 A.D.2d 544, 545, 426 N.Y.S.2d 785, 786 (N.Y. App. Div. 1st Dep't 1980) (prosecutor gave impermissibly inflammatory summation); *People v. Bendell*, 111 A.D.2d 87 (N.Y. App. Div. 1st Dep't 1985) *rev'd*, 67 N.Y.2d 724 (1986) (First Department's finding that prosecutor became an unsworn witness and placed his own veracity at issue in redirect and summation, and overreached in cross-examination was reversed by Court of Appeals on the grounds that prosecutor's statements were harmless and cross-examination was proper).

[7] *People v. Jones*, 128 A.D.2d 405, 406 (N.Y. App. Div. 1st Dep't 1987) (prosecutor failed to disclose certain documents in violation of state law); *People v. Taylor*, 160 A.D.2d 556, 557 (N.Y. App. Div. 1st Dep't 1990) (prosecutor's failure to timely disclose witnesses was not prejudicial because, *inter alia*, two of the four witnesses nevertheless testified); *People v. Jackson*, 237 A.D.2d 179, 180, 655 N.Y.S.2d 17 (N.Y. App. Div. 1st Dep't 1997) (prosecutor failed to turn over internal affairs documents); *People v. Wallert*, 98 A.D.2d 47, 47-48 (N.Y. App. Div. 1st Dep't 1983) (prosecutor knew but failed to disclose that the victim who testified against the defendant was awaiting the outcome of the criminal action to file a civil action against the defendant); *People v. Davis*, 81 N.Y.2d 281, 614 N.E.2d 719 (N.Y. App. Div. 1st Dep't 1993) (prosecutor failed to disclose that the victim misidentified an alleged co-perpetrator); *People v. Ramos*, 141 Misc. 2d 930, 938-39, 535 N.Y.S.2d 663, 669 (N.Y. Co. Sup. Ct. 1988) (prosecutor's delay in providing grand jury minutes did not require mistrial).

impermissible trial preparation tactics.[8] None of the cases cited by D'Alessandro involved prosecutors citing to overturned law, "proceeding with an illegal investigation ... despite the fact that a signed indictment containing such charge was never obtained," "refus[ing] to disclose grand jury minutes to the trial court, for hundreds of days, in an attempt to ... exert undue influence to accept the offered plea," obtaining a superseding indictment as "retribution ... [for] failure to plead to the initial (false) charges," hiding unspecified exculpatory evidence, or "procuring and facilitating false witness statements ... while failing to reveal and investigate the witnesses and their actual and true statements." (Amd. Compl. ¶¶ 25-36). Thus, D'Alessandro has failed to show a pattern of practice as required to state a failure to train claim against the City.

Moreover, D'Alessandro's "single-incident" theory of liability is foreclosed by *Connick*. The *Connick* Court concluded that because all lawyers, including prosecutors, are presumptively able to "apply legal principles, understand constitutional limits, and exercise legal judgment," and "[i]n light of [their] legal training and professional responsibility, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* at 1361-63. Thus, there could be no liability under a "single-incident" theory for failing to train prosecutors to comply with their obligations to turn over material exculpatory to the defense, as required by *Brady v. Maryland. Id.* ("Failure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton*'s hypothesized single-incident liability."). So too here, in light of the training lawyers undergo and their ethical obligations, it is not an "obvious consequence" of a district attorney's failure to

---

[8] *People v. Arocho*, 85 Misc. 2d 116, 118, 379 N.Y.S.2d 366, 368 (N.Y. Co. Sup. Ct. 1976) (holding that prosecutor who served improper subpoenas on witnesses is barred from using statements obtained at resulting interviews at trial);

provide additional training that assistant prosecutors will argue in favor of a law that has been overturned. *Id.*; *see also Robinson*, 2011 WL 1541044, at *3-4.

### *The City's Motion for Rule 11 Sanctions is Denied*

The City moves for sanctions against D'Alessandro under Rule 11 of the Federal Rules of Civil Procedure on the theory that D'Alessandro's claims are frivolous and his factual contention that no indictment was returned is belied by circumstantial evidence suggesting that a true bill was returned by a New York grand jury on November 3, 1989. (Krasnow Decl., Exs. E, F, H.)

Under Federal Rule of Civil Procedure 11, a court may impose appropriate sanctions on "any attorney, law firm, or party that violated" Rule 11(b) or is responsible for the violation. Rule 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "The mental state applicable to liability for Rule 11 sanctions initiated by motion is objective unreasonableness." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).

Given that the City seeks dismissal as a sanction, the motion is largely moot. To the extent the City also seeks costs, it has failed to show that sanctions are warranted. D'Alessandro speculates that there was no true bill returned merely because, over twenty years later, a copy cannot be found in the court files. Although his theory is contradicted by some circumstantial evidence, it cannot be said that his position is "objectively unreasonable." Thus, the City's motion for sanctions is denied.

## CONCLUSION

The motions to dismiss filed by the DA Defendants and the City of New York are granted. The City of New York's motion for sanctions is denied. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED**

/s/ *Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge

Dated: Nov 22, 2016
Brooklyn, New York